**The libel of SUNLIGHT, INC., as owner of the F/V SUNLIGHT in rem and in personam**

**v.**

**The F/V BLUEWATERS, her engines, boilers, etc., and Bluewaters, Inc.**

**No. 60–59–F.**

United States District Court
D. Massachusetts.

May 22, 1962.

William T. Conlan, Ely, Bartlett, Brown & Proctor, Boston, Mass., for libellant.

Solomon Sandler, Gloucester, Mass., for respondent.

FRANCIS J. W. FORD, District Judge.

Libelant, owner of the fishing vessel Sunlight, seeks to recover here for damage to the hull of the Sunlight, allegedly caused in a collision of the Sunlight and respondent's fishing vessel Bluewaters, and for detention for the time the hull of the Sunlight was being repaired.

On March 12, 1959, both vessels were fishing off the coast of Nova Scotia. Because of radio reports of a coming storm both vessels for safety went into port at Shelburne, Nova Scotia. The Sunlight arrived there first about 6:30 p. m. and tied up at the end of the Government Pier, portside to the pier, facing the wind which was then blowing from the east at about 25 miles per hour. The vessel was secured with a bow line, stern line and two spring lines, all tied to the pier. The Bluewaters came into the harbor about 8:30 on the same evening. At that time the berths around the Government Pier were all occupied, the vessels on the westerly side being tied up two or three abreast of each other. The Bluewaters tied up at the end of the pier outside the Sunlight. It was secured by a bow line, stern line and two spring lines, all tied to the Sunlight and an additional bow line attached to the pier.

Captain Noble of the Sunlight was awake on board his vessel until after midnight listening to weather reports on the radio. About 1:00 a. m. the wind began to blow from a south-southwesterly direction, causing the Bluewaters to bump against the Sunlight. Noble, who had gone to his cabin to lie down on his bunk, got up and about 15 minutes later, seeing no one on deck on the Bluewaters, crossed over to that vessel and called down to the forecastle that it was blowing badly and that they had better get away immediately. Captain Mineo of the Bluewaters, who was in the forecastle, re-

plied, "O. K. We'll leave right away." Thereafter both vessels, first the Bluewaters and then the Sunlight, pulled away from the pier and anchored in the channel.

Noble testified that there was damage to the guard rail and side of his vessel on the starboard side caused by the bumping against it of the Bluewaters, that the next morning the Sunlight put to sea to continue fishing, that it had to put back to Shelburne where temporary repairs were made, and that later the Sunlight was in the shipyard at Gloucester from March 26 to April 15 for repairs, including repair of the damage allegedly caused by the Bluewaters.

Libelant urges as grounds for imposing liability on the respondent that the Bluewaters failed to put out proper fenders or bumpers when it tied up alongside the Sunlight and second that the Bluewaters failed to get away promptly from the Sunlight when the vessels began to bump together.

Captain Noble testified first that the Bluewaters put out no bumpers when it tied up and did not put any out until after it had pulled away from the Sunlight. He testified that it was customary for vessels to tie up abreast as the Bluewaters did alongside the Sunlight and that, except for the absence of bumpers, there was nothing wrong in the manner in which the Bluewaters originally tied up. For the respondent there was testimony of Captain Mineo that as the Bluewaters approached the pier he ordered the bumpers put out, of witness Curreri, a member of the crew of the Bluewaters, that he took part in putting over the side of the Bluewaters one large truck tire and two smaller ones to serve as bumpers, and of Cressy, another crew member, that after the Bluewaters had tied up he crossed over to the Sunlight and while doing so saw the tires in place between the two vessels. The court finds that the Bluewaters was properly tied up to the Sunlight and in particular that the Bluewaters put out bumpers which were proper and adequate under the circum-stances as they existed at the time the Bluewaters tied up.

However, even though the Bluewaters was originally properly moored outboard of the Sunlight, it nevertheless had the duty to take prompt action to prevent damage to the Sunlight when a sudden change in weather conditions made the situation hazardous. Captain Noble testified that he came from his cabin when disturbed by the pounding of the vessels, that he then alerted his crew and prepared to leave, that he saw no movement on the Bluewaters for a period of 15 minutes, that he then went aboard the Bluewaters and spoke to Mineo in the forecastle, and that it was another 15 minutes after that before the Bluewaters finally moved away from the Sunlight. He further testified that the operation of casting off the lines of the Bluewaters and backing it away could reasonably have been performed in five to seven minutes.

Mineo and Curreri testified that the Bluewaters cast off and pulled away from the Sunlight within five or at most seven minutes after Noble asked Mineo to move. Cressy testified that he was sleeping aboard the Sunlight, that he was awakened by someone calling to the members of the Sunlight crew to get up because they had to move the boat, that he then got up and returned to his own boat, the Bluewaters, which pulled away about three minutes after he had come up on deck on the Sunlight.

Libelant's contention is that at the time Noble came from his cabin the situation was so hazardous that the Bluewaters should then have pulled away immediately, and that it unreasonably delayed to do so for a 30-minute period during which the Sunlight was damaged. The court cannot find that libelant has sustained the burden of showing that during the first 15 minutes of this period, up to the time Noble spoke to Mineo, the situation was such as to require the Bluewaters to move away. It seems unlikely that Noble would have waited 15 minutes while his vessel was being seri-

ously battered without making some effort to rouse someone on the Bluewaters where he says he saw no one about. In the light of Cressy's testimony the court cannot find that Noble alerted his own crew until approximately the time he asked Mineo to move. It seems clear that it was at this point that the situation became such that Noble, an experienced captain, first concluded that a move away from the pier was necessary. The court finds that, as testified by Mineo, Curreri and Cressy, the Bluewaters cast off and moved away from the Sunlight in five to seven minutes, the time which Noble himself testified was a reasonable one for the operation. The court finds that under the circumstances the Bluewaters took reasonably prompt and effective action to avoid causing injury to the Sunlight.

The conclusion must be that libelant has failed to show that any fault or negligence on the part of respondent caused or contributed to any injury which may have been suffered by the Sunlight.

Judgment will be entered for respondent.